# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2020

No. 20-20034

Lyle W. Cayce
Clerk

JAMES SIMMONS,

United States Courts
Southern District of Texas
FILED

*Plaintiff—Appellant,*

September 17, 2020

David J. Bradley, Clerk of Court

*versus*

UBS FINANCIAL SERVICES, INCORPORATED,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3301

Before SMITH, WILLETT, and DUNCAN, *Circuit Judges.*

JERRY E. SMITH, *Circuit Judge*:

Title VII claims require an employment relationship between plaintiff and defendant. James Simmons essentially asks this court to adopt an exception where a nonemployee (Simmons) is the intentional target of an employer's retaliatory animus against one of its employees (Simmons's daughter). That we cannot do. As a nonemployee, Simmons asserts interests that are not within the zone that Title VII protects. We therefore affirm the dismissal of the complaint for lack of statutory standing.

No. 20-20034

## I.

Simmons was employed by Prelle Financial Group as a third-party wholesaler of life-insurance products to clients of UBS Financial Services, Incorporated ("UBS" or "the company").[1] Simmons frequently worked out of UBS's offices.

Simmons's daughter, Jo Aldridge, was a UBS employee who submitted an internal complaint of pregnancy discrimination and filed a charge with the EEOC. Aldridge eventually resigned and settled her claims.

In the months that followed, Simmons's third-party relationship with UBS deteriorated. Allegedly in retaliation for his daughter's complaints, UBS revoked Simmons's right of access to the UBS offices and then eventually forbade him from doing business with its clients. That effectively ended Simmons's employment at Prelle Financial, and he left.

Simmons sued, among others, UBS. He theorized that the company "retaliated against his daughter by taking adverse actions against him." UBS promptly moved to dismiss, contending that because Simmons was not a UBS employee, he could not sue under Title VII. The district court agreed and dismissed with prejudice, holding that Simmons's nonemployee status forecloses his statutory standing to sue.

Simmons appeals. The only issue is whether he, a nonemployee, can sue under Title VII as the intentional target of the retaliation against his daughter. No federal court of appeals has addressed whether nonemployees can bring such claims.

---

[1] Because this case was dismissed under Federal Rule of Civil Procedure 12(b)(6), the facts are taken from the complaint. *See, e.g., Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020).

No. 20-20034

## II.

We review a Rule 12(b)(6) dismissal *de novo*, *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 441 (5th Cir. 2020), crediting all well-pleaded facts and construing them in the plaintiff's favor, *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020).

## A.

To sue under Title VII, a purported plaintiff must establish statutory standing. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011). Unlike Article III standing, statutory standing is not jurisdictional.[2] Instead, it asks the "merits question" of "whether or not a particular cause of action authorizes an injured plaintiff to sue." *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008).

"[T]he person claiming to be aggrieved . . . by the alleged unlawful employment practice" has Title VII standing.  42 U.S.C. § 2000e-5(f)(1). To qualify as a "person . . . aggrieved," the plaintiff must bring a claim that "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson*, 562 U.S. at 177 (quotation marks omitted).  That familiar test "requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127.

---

[2] *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) ("The latter question is an issue of *statutory* standing. It has nothing to do with whether there is [a] case or controversy under Article III."); *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 332 (5th Cir. 2014) (noting that statutory standing is not jurisdictional and hence should not be analyzed under Rule 12(b)(1)).

3

No. 20-20034

The zone-of-interests test "is not meant to be especially demanding." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak* ("*Match-E*"), 567 U.S. 209, 225 (2012). Indeed, anyone "with an interest arguably sought to be protected by the statute" can head to federal court.[3] Even so, a litigant is out of luck when his "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

We assume, without deciding, that Simmons's daughter would have a claim for retaliation based on UBS's termination of its business relationship with her father in response to her protected activity.[4]  The question is whether Simmons is also a proper Title VII plaintiff, even though he did not engage in protected activity.  The case on point is *Thompson*, 562 U.S. at 172.

### B.

In *Thompson*, the plaintiff (Thompson) and his fiancée were employed by the same company.  The fiancée filed a sex discrimination charge with the EEOC.  Just three weeks later, the company fired Thompson, who sued, alleging that the company had fired him to retaliate against his fiancée for

---

[3] *Thompson*, 562 U.S. at 178 (cleaned up); *accord Match-E*, 567 U.S. at 225 ("[W]e have always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff.").

[4] *See Thompson*, 562 U.S. at 173–75 (analyzing whether company unlawfully retaliated against the plaintiff's fiancée before asking whether the plaintiff could maintain his own suit).  In moving to dismiss, UBS argued in the alternative that Simmons had failed to plead a *prima facie* case of retaliation.  The company contended that several of the actions against Simmons were only annoyances, not actionable retaliation, and noted that Simmons's sales relationship with UBS ended over a year after the daughter filed the discrimination charge.  The district court did not address those arguments, instead ruling on statutory standing alone, and UBS does not press them as an alternative basis to affirm.

4

No. 20-20034

filing her charge.  The Court held that reprisals visited on third parties can violate Title VII, *id.* at 174–75,[5] and it concluded that the decision to fire Thompson was unquestionably an unlawful act of retaliation against his fiancée, *id.* at 173–74.  But "[t]he more difficult question"—as here—was whether Thompson could also sue the company for that retaliation.  *Id.* at 175.

Because Thompson qualified as a "person . . . aggrieved," 42 U.S.C. § 2000e-5(f)(1), the Justices held that he could do so, *see Thompson*, 562 U.S. at 175–78.  Importantly, the Court rejected the categorical view that only the employee who engages in the protected activity (in *Thompson*, the fiancée) may sue.  *Id.* at 177.  If that were right, then Congress would have said "person claiming to have been discriminated against," not "person claiming to be aggrieved."  *Id.*; *see* 42 U.S.C. § 2000e-5(f)(1).

Instead, the Court settled on a tried-and-true test for determining who is a "person . . . aggrieved" with standing to sue—the zone-of-interests standard highlighted above.[6]  Applying that standard, the Court held that, for two reasons, Thompson had a cause of action.  First, like his fiancée, Thompson was an employee of the defendant company, "and the purpose of Title VII is

---

[5] Not just any third party will do, however.  The Court "decline[d] to identify a fixed class of relationships for which third-party reprisals are unlawful."  *Id.* at 175.  But it noted that "firing a close family member will almost always meet the . . . standard, [while] inflicting a milder reprisal on a mere acquaintance will almost never do so."  *Id.*  Again, we assume, without ruling, that the "reprisal[s]" visited on Simmons counted as unlawful retaliation against his daughter.

[6] *Id.* at 177–78.  This test originates in Administrative Procedure Act caselaw.  *See Lexmark*, 572 U.S. at 129.  "[I]ts roots lie in the common-law rule that a plaintiff may not recover under the law of negligence for injuries caused by violation of a statute unless the statute is interpreted as designed to protect the class of persons in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation."  *Id.* at 130 n.5 (quotation marks omitted).

No. 20-20034

to protect employees from their employers' unlawful actions." *Thompson*, 562 U.S. at 178. Second, Thompson's termination "was the employer's intended means of harming" his fiancée. *Id.* Thompson was not "an accidental victim of the retaliation" or "collateral damage"; instead, "[h]urting him was the unlawful act by which the employer punished her." *Id.* So, even though Thompson had not engaged in protected activity, he fell within Title VII's zone of interests and so had statutory standing. *See id.*

## C.

Naturally, both parties try to claim *Thompson*'s mantle. Simmons insists that *Thompson*'s facts and holding apply without blemish, demonstrating that he has statutory standing. He theorizes that it is consistent with Title VII's antidiscrimination purposes to allow an affected third party like him to sue under his circumstances even if not employed by the defendant. The fact that UBS "purposefully targeted him because of his close association with an employee who has engaged in protected activity" is enough, he thinks, to bring him within *Thompson*'s reach (quoting *Tolar v. Cummings*, No. 2:13-cv-00132-JEO, 2014 WL 3974671, at *12 (N.D. Ala. Aug. 11, 2014)).

In response, UBS admits that *Thompson* has some things in common with this case, insofar as Simmons too was the intentional victim of an employer's efforts to retaliate against one of its employees. But that's not nearly enough, the company urges. Like the district court, UBS considers it dispositive that Simmons was not an employee of UBS.[7]

---

[7] UBS does not challenge Simmons's Article III standing. That is not surprising, given that *Thompson*, 562 U.S. at 176, opined that the similarly situated plaintiff's claim "undoubtedly" met the Article III requirements. To be sure, this case has a "third-party standing" flavor to it, in that Simmons contends that he can sue to challenge the retaliation directed at his daughter. But, in any event, five Justices recently reaffirmed that third-

6

No. 20-20034

### D.

Because he was not a UBS employee, Simmons lacks Title VII standing. As *Thompson* observed without controversy, "the purpose of Title VII is to protect employees from their employers' unlawful actions."[8] And because the plaintiff was himself employed by the defendant, the Court permitted him to sue. *Thompson*, 562 U.S. at 178. It would be a remarkable extension of *Thompson*—and of Title VII generally—to rule that a nonemployee has the right to sue. The zone of interests that Title VII protects is limited to those in employment relationships with the defendant.

*Thompson*'s focus on Title VII's employee-protection purpose has firm support in the statute's substantive provisions, which set the boundaries of the "zone of interests."[9] The retaliation ban is the one that matters here, and it forbids discrimination by an "employer" against "any of his *employees* or *applicants* for employment." 42 U.S.C. § 2000e-3(a) (emphasis added).

---

party-standing is prudential and forfeitable. *See June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2117 (2020) (four-Justice plurality); *id.* at 2139 n.4 (Roberts, C.J., concurring in the judgment) (agreeing with plurality's analysis of third-party standing); *see also Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 & 474 n.4 (5th Cir. 2013) (stating that third-party standing is not jurisdictional). *But see Lexmark*, 572 U.S. at 127 n.3 (leaving for "another day" third-party standing's "proper place in the standing firmament").

[8] *Thompson*, 562 U.S. at 178; *accord EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984) ("The dominant purpose of [Title VII], of course, is to root out discrimination in employment."); *see also Match-E*, 567 U.S. at 226 (beginning the zone-of-interests inquiry by looking to the statute's purpose).

[9] *See, e.g., Bennett v. Spear*, 520 U.S. 154, 175–76 (1997) ("Whether a plaintiff's interest is arguably protected by the statute within the meaning of the zone-of-interests test is to be determined . . . by reference to . . . the specific provision which [he] allege[s] ha[s] been violated." (cleaned up)); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (noting that the test focuses on "the statutory provision whose violation forms the legal basis for [the] complaint"); *see also Thompson*, 562 U.S. at 173, 178 (reviewing the text of the retaliation provision and concluding that Title VII is meant to protect employees from the actions of their employers).

7

No. 20-20034

And to the extent it is relevant to revealing Title VII's broader purposes, the discrimination provision too speaks of the "terms, conditions, or privileges *of employment.*" *Id.* § 2000e-2(a)(1) (emphasis added).

To be sure, those provisions delineate what kind of employer conduct is unlawful and not necessarily who can sue for it. But that distinction is of little significance, because the zone-of-interests test looks to the law's substantive provisions to determine what interests (and hence which plaintiffs) are protected. *See, e.g., Bennett*, 520 U.S. at 175–76. Here, those provisions make clear what sort of interests are covered: the interests of those in employment relationships with the defendant.[10] So Simmons's interests are, at best, only "marginally related to" the purposes of Title VII.[11]

Indeed, it is no accident that *Thompson*'s example of an "absurd" case for statutory standing involved a *non*employee. *Id.* at 176. Imagine a shareholder who sues a company under Title VII for firing a valuable employee for discriminatory reasons, theorizing that the shareholder's stock value had plummeted as a result. *Id.* at 177. The Court considered it ridiculous that the shareholder might be able to maintain such a suit, so it rejected the theory that anyone with Article III standing may sue for a Title VII violation. *Id.* To be sure, that hypothetical situation is different from this case in that the shareholder's loss is only "collateral damage" of the Title VII violation, *id.* at 178, but it is revealing that the Court's *reductio ad absurdum* example involves a nonemployee. "Shareholders are not within Title VII's zone of

---

[10] *See Thompson*, 562 U.S. at 178 ("[T]he purpose of Title VII is to protect employees from their employers' unlawful actions.").

[11] *Sec. Indus. Ass'n*, 479 U.S. at 399. Simmons's principal case—*White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 307 (5th Cir. 2020)—followed this approach, looking to 42 U.S.C. § 1981's substantive ban on discrimination in setting the zone of protected interests.

8

No. 20-20034

interests *because* 'the purpose of Title VII is to protect employees from their employers' unlawful actions.'"[12]

Simmons theorizes that his daughter's status as an employee is all that matters—*hers* "is the employment relationship that brings the case within the scope of Title VII."[13] "[T]he purpose of . . . protect[ing] employees from their employers' unlawful actions," Simmons suggests, "is still served by allowing a third party to sue for harm it suffers as a direct result of the defendant's retaliatory animus toward its complaining employee, even if [the] third party was not itself also an employee of the defendant" (quoting *Tolar*, 2014 WL 3974671, at *12).[14]

---

[12] *Collins v. Mnuchin*, 938 F.3d 553, 576 (5th Cir. 2019) (en banc) (emphasis added) (quoting *Thompson*, 562 U.S. at 178), *cert. granted*, 2020 WL 3865248 (U.S. July 9, 2020) (No. 19-422), *and cert. granted*, 2020 WL 3865249 (U.S. July 9, 2020) (No. 19-563).

[13] In support, Simmons notes briefly that the EEOC's current guidance suggests that "[w]here there is actionable third party retaliation, . . . the third party who is subjected to the materially adverse action may state a claim . . . even if he has never been employed by the defendant employer" (quoting EEOC Enforcement Guidance on Retaliation and Related Issues § II(B)(4)(b) (2016), *available at* https://perma.cc/2LTJ-EHJY). That view departs from the old guidance, which held that such retaliation could be challenged only where the plaintiff was also an employee of the defendant. *See* EEOC Compliance Manual § 8–II(C)(3) (1998) (emphasis added).

Simmons waives reliance on "*Skidmore* deference" to the guidance. Even if we applied it, it would change nothing. *Skidmore* deference—if indeed that is the right way to describe it—means that the agency's interpretation is "entitled to respect[,] . . . but only to the extent that [it] ha[s] the power to persuade," *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (quotation marks omitted), which is a bit like saying a court need only respect that which is respectable. Here, for reasons described, it is not persuasive that Title VII recognizes the interests of third-party nonemployees.

[14] Simmons also suggests that if status as an employee were "dispositive of standing," then much of *Thompson* would have been surplusage, because "[t]he Supreme Court would simply have found standing because [the plaintiff there] was an employee." But Simmons misunderstands UBS's position, which is that employment by the defendant is a necessary condition for bringing suit, not that it is sufficient in every case.

9

No. 20-20034

But Simmons misunderstands what the zone-of-interests test is all about: It asks whether *this plaintiff* is of the "class" that may sue for the violation.[15] In other words, "the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected."[16] Unsurprisingly, then, in evaluating whether the plaintiff could sue, *Thompson* focused on the plaintiff's circumstances and injuries: that he was an employee and was the intentional victim of the retaliation. It was not enough that permitting the suit would advance, generally speaking, Title VII's goal of eliminating retaliation. *Thompson*, 562 U.S. at 178.

As a result, his daughter's status as an employee is not enough to deposit Simmons into federal court.[17] Instead, he must show that his personal interests are arguably covered. That he has failed to do.[18]

---

[15] *Lexmark*, 572 U.S. at 128; *accord Sec. Indus. Ass'n*, 479 U.S. at 397 (focusing on "the class of potential plaintiffs").

[16] *Nat'l Wildlife Fed'n*, 497 U.S. at 883; *see also, e.g., id.* at 886 (evaluating whether statute protected the plaintiff's recreational and aesthetic interests); *Sec. Indus. Ass'n*, 479 U.S. at 403 (examining whether a trade association's competitive interests were protected by a statute in which Congress sought to prevent national banks from gaining monopoly control); *Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 499 (1998) (deciding whether competitors' interest in limiting the markets that credit unions may serve was within the zone of interests protected by a statute); *Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 528 (1991) (holding that postal employees' interests were outside the zone of a statute giving the federal government a postal monopoly, because the "monopoly . . . exists to ensure that postal services will be provided to the citizenry at large, and not to secure employment for postal workers").

[17] *Cf. Nat'l Wildlife Fed'n*, 497 U.S. at 883 (focusing on whether the plaintiff's injuries are of the sort that the statute is designed to protect against).

[18] We have so far neglected to mention that Simmons is a *former* UBS employee. One might imagine an argument that his former employment supplies him with the "employment relationship" he needs under *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), which recognizes that former employees have Title VII rights against retaliation by their former employers. Combine *Robinson* with *Thompson* (the intentional victim of the

10

No. 20-20034

What is "the injury [Simmons] complains of"—"*his* aggrievement, or the adverse effect *upon him*"? *Id.* Unlike in *Thompson*, 562 U.S. at 178, it has nothing to do with how his employer treated him. Instead, Simmons's beef is with an independent entity's decision to stop doing business with him as a third-party wholesaler. That is not the stuff that Title VII was written to address. *See id.* Simmons's claims might sound in tort, but they have no home in the Civil Rights Act of 1964.

Finally, *White Glove*, 947 F.3d at 307–08, does not rescue Simmons, even if it does represent a broad application of the zone-of-interests test. That case involved a claim under § 1981—which "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race"[19]—brought by a *non-minority-owned* staffing company. *See White Glove*, 947 F.3d at 304, 306. The staffing company claimed that one of its clients had discriminated against one of the company's black cooks by refusing, on the basis of race, to accept her services. *Id.* at 303–04, 307. Even though "the alleged discrimination was

---

retaliation against a family-member employee may sue) and—voilà!—maybe Simmons belongs in federal court.

Simmons not only fails to make that argument—he concedes that he lacks a relevant employment relationship with UBS. He classifies himself as a "non-employee" and admits that "the relevant employment relationship for purposes of Title VII is . . . not between UBS and Mr. Simmons." So considering a *Robinson*-based theory would prejudice UBS—which has had no opportunity to address it—and would contradict basic principles of waiver. *See Smith v. Ochsner Health Sys.*, 956 F.3d 681, 688 n.2 (5th Cir. 2020) ("[W]aiver is the intentional relinquishment or abandonment of a known right."). We therefore reserve for another day how *Robinson* and *Thompson* interact, and for purposes of this opinion, we classify Simmons just as he identifies himself: a nonemployee, with no relevant employment relationship with the defendant. *See, e.g.*, *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[O]ur system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (cleaned up)).

[19] *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

against [the black cook], not [the staffing company] itself," *id.* at 307, the company's claim still fell within the zone of interests that section 1981 protects, *id.* at 307–08.

*White Glove* has minimal application here. It involves a different statute—section 1981—whose expansive language ("[a]ll persons") suggests a much broader sweep of permissible plaintiffs than does Title VII, which is designed for a specific subclass of persons (employees). *See id.* at 307; *cf. Bennett*, 520 U.S. at 163 ("[T]he breadth of the zone of interests varies according to the provisions of law at issue . . . .").

\* \* \* \* \* \*

Title VII protects employees from the unlawful acts of their employers. It does not—even arguably—protect nonemployees from mistreatment by someone else's employer. So the judgment of dismissal is AFFIRMED.